UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Civil Action No. 17-cv-00838-REB

AZIZ AKBICHI,

    Plaintiff,

v.

NANCY BERRYHILL, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security,[1]

    Defendant.

---

**ORDER REVERSING DISABILITY
DECISION AND REMANDING TO DEPUTY COMMISSIONER**

---

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[2] filed April 5, 2017, seeking review of the Deputy Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Deputy Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse and remand.

---

[1] On March 6, 2018, the Government Accountability Office determined that Nancy Berryhill's continuing status as Acting Deputy Commissioner of Social Security violated the Federal Vacancies Reform Act, and therefore that she was not authorized to continue serving as Acting Deputy Commissioner after November 16. Until such time as a successor is nominated and confirmed, Ms. Berryhill appears as the Deputy Deputy Commissioner of Operations for the agency. *See* **Nancy A. Berryhill**, Social Security Administration (available at: https://www.ssa.gov/agency/Deputy Commissioner.html) (last accessed April 5, 2018); **Social Security News**, *Does This Mean That Nancy Berryhill Is Now the Acting Deputy Commissioner of Social Security?* (available at: https://socsecnews.blogspot.com/2018/03/does-this-mean-that-nancy-berryhill-is.html) (last accessed April 5, 2018).

[2] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as a result of osteoarthritis and avascular necrosis of the right hip, epilepsy, obesity, and major depressive disorder and personality disorder. After his applications for disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on October 7, 2015. At the time of the hearing, plaintiff was 49 years old. He has a high school education and past relevant work experience as a refrigeration technician and a furniture salesman. He has not engaged in substantial gainful activity since April 30, 2008, his alleged date of onset.

The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits. Although the medical evidence established plaintiff's suffered from severe impairments, the judge concluded the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found plaintiff had the residual functional capacity to perform a reduced range of sedentary work with postural, environmental, and non-exertional limitations, most specifically for present purposes, a limitation to simple, routine, and repetitive tasks. Although this finding precluded plaintiff's past relevant work, the judge determined there were other jobs existing in sufficient numbers in the national and local economies that he could perform. He therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Deputy Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Deputy Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the

> claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v).³ ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Deputy Commissioner to show that the claimant is capable of performing work in the national economy. ***Id.*** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Deputy Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of

---

³ Throughout this opinion, although I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Deputy Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Deputy Commissioner. ***Id.***

### III. LEGAL ANALYSIS

In two concise, related points of error, plaintiff maintains the ALJ's determination at step five of the sequential evaluation that there are other jobs in the local and national economies which he could perform within the limits of his residual functional capacity is not supported by substantial evidence. I concur, and therefore reverse.

Plaintiff's residual functional capacity, as determined by the ALJ, precluded all his past relevant work. (***See*** Tr. 32-33, 61-62.) Nevertheless, based on the testimony of a vocational expert at the administrative hearing, the ALJ found there were other jobs existing in significant numbers in the local and national economies plaintiff could perform. Specifically, and again consistent with the testimony of the vocational expert at the hearing, the ALJ found the alternative jobs of document preparer, collator operator, and surveillance system monitor were consistent with plaintiff's residual functional capacity. (Tr. 34, 63.)

As plaintiff points out, contrary to the testimony of the vocational expert, the collator operator job is a light, not a sedentary, occupation. (***See DOT*** No. 208.685-010 (available at: https://occupationalinfo.org/20/208685010.html) (last accessed April 9, 2018).) The ALJ has an affirmative duty to inquire as to and resolve any apparent conflict between the job requirements identified in the ***DOT*** and the vocational expert's testimony. **Social Security Ruling** 00-4p, 2000 WL 1898704 at *4 (SSA Dec. 4, 2000).

While the ALJ did query the vocational expert generally as to whether her

5

testimony was consistent with the *DOT* (*see* Tr. 64), the vocational expert's incorrect recitation of the exertional level of the document preparer job does not constitute substantial evidence in support of the ALJ's determination that plaintiff could perform that job in the circumstances of this case. Although the vocational expert did clarify that her testimony regarding the ability to sit and stand as needed and employer tolerances for abstenteeism, breaks, and other off-task allowances were based on her professional experience (Tr. 64), those specific matters do not address whether a claimant with plaintiff's limited sedentary residual functional capacity can perform the requirements of an occupation designated as light work by the *DOT*.

Moreover, while this error in the vocational expert's testimony might not have been apparent at the hearing, a simple perusal of the *DOT* description of the job would have highlighted the error. The burden of confirming this job was within the parameters of plaintiff's residual functional capacity falls on the ALJ. *See Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999).

Because the Deputy Commissioner essentially concedes plaintiff's next argument, that the requirement of the surveillance system monitor job for "frequent" talking is inconsistent with the ALJ's determination that plaintiff was limited to no more than occasional interaction with supervisors, coworkers, and the public (*see* **Def. Resp.** at 8), the ALJ's disability determination must stand or fall based on the sole remaining alternative job identified as within plaintiff's residual functional capacity – that of document preparer. Plaintiff contends the demands of this job are inconsistent with the ALJ's conclusion that plaintiff was limited to simple, routine, and repetitive tasks because the job presupposes a General Educational Development ("GED") reasoning

level of 3.[4]  (**See DOT** No. 249-587-018 (available at: https://occupationalinfo.org/24/249587018.html) (last accessed April 9, 2018).)  As I have noted previously, "[t]he law in this circuit is clear:"

> [W]hen a claimant retains the mental RFC to perform only "simple and routine work tasks" – and the ALJ finds a claimant not disabled at step five based on a vocational expert's testimony that the claimant is able to perform jobs with a reasoning level of three – finding that the claimant was not disabled at step five is not based upon substantial evidence.

**Barnes v. Colvin**, 27 F.Supp.3d 1153, 1160 (D. Colo. 2014) (citations omitted). **See also Hackett v. Barnhart**, 395 F.3d 1168, 1176 (10th Cir. 2005) (limitation to "simple and routine work tasks" "seems inconsistent with the demands of level-three reasoning"); **Scheibeler v. Astrue**, 2009 WL 3077310 at *3 (D. Colo. Sept. 21, 2009) ("A person . . . whose mental RFC is limited to 'simple' work and work that is not 'detailed' would thus arguably lack the mental RFC for jobs at or above R2.")

The Deputy Commissioner points out that GED "does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job," **Anderson v. Colvin**, 514 Fed. Appx. 756, 764 (10th Cir. April 4, 2013), and maintains that plaintiff's

---

[4] GED is comprised of three variables – Reasoning Development, Mathematical Development, and Language Development.  "General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.  This is education of a general nature which does not have a recognized, fairly specific occupational objective."  **DOT**, App. C § III: Components of the Definition Trailer http://www.occupationalinfo.org/appendxc_1.html#III (last accessed April 10, 2018).  A reasoning level of 3 suggests the job requires the ability to "[d]eal with problems involving several concrete variables in or from standardized situations;" by comparison, a reasoning level of 1 requires no more than the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions."  **DOT**, Appendix C, § III, ¶ 03, available at http://www.occupationalinfo.org/appendxc_1.html#III (last accessed April 10, 2018).

level of education indicates jobs he can perform jobs with a reasoning level of 3.[5] *See* 20 C.F.R. § 1564(b)(4) ("We generally consider that someone with [a high school education and above] can do semi-skilled through skilled work."]  This argument completely ignores the ALJ's express determination that plaintiff, despite his educational background, is now limited to simple, routine, and repetitive tasks.[6]  Although the vocational expert possibly could have supplied an explanation for the apparent discrepancy between plaintiff's residual functional capacity and the reasoning level required of the alternative jobs she identified, she did not.  The court cannot accept the Deputy Commissioner's post hoc rationalization of that decision, *see Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005), nor is it authorized to make that determination itself.  The matter must be remanded to resolve the apparent discrepancy in the record.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the conclusion of the Deputy Commissioner through the Administrative Law Judge that plaintiff was not disabled is reversed;

---

[5] The Deputy Commissioner's contention that ***Anderson*** and ***Hackett*** represent a split in authority in the Tenth Circuit on this issue is unpersuasive. It is plain that the difficulty identified in ***Hackett*** and its progeny stems from the *unexplained* equivalence between a claimant's limited mental residual functional capacity and alternative jobs which ostensibly require more complex reasoning. ***See, e.g.***, ***Barnes***, 23 F.Supp.3d at 1160. The cases the Deputy Commission cites in support of this argument are inapposite, either because the mental limitations proposed to the vocational expert were specifically defined in terms of GED levels, ***see, e.g.***, ***Mounts v. Astrue***, 479 Fed. Appx. 860, 868 (10th Cir. May 9, 2012), or because, as in ***Anderson*** itself, any error was found harmless, ***see Anderson***, 514 Fed. Appx. at 764.

[6] To the extent the Deputy Commissioner argues that a capacity for semi-skilled or skilled work correlates to a Specific Vocational Preparation ("SVP") level of 3 or above, ***see* SSR** 00-4p, 2000 WL 1898704 at *3, she ignores the distinctions between the GED and SVP rubrics. ***See Barnes***, 23 F.Supp.3d at 1160 (noting clear "disconnect" between GED and SVP, "which is perhaps unsurprising given that they comprise distinct components of the definition trailer").

2. That this case is remanded to the ALJ, who is directed to

   a. Solicit further vocational expert testimony or otherwise further develop the record as he deems necessary to substantiate a determination as to whether there are other jobs in the local and national economies that are within plaintiff's residual functional capacity as previously assessed;

   b. Reassess his determination at step 5 of the sequential evaluation; and

   c. Reassess the disability determination; and

3. That plaintiff is awarded his costs, to be taxed by the clerk of the court in the time and manner required by Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1).

Dated April 11, 2018, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge